**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Laurel Myra Penrod,<br><br>    Plaintiff,<br><br>v.<br><br>Mohave Community College,<br><br>    Defendant. | No. CV 04-2398-PCT-PGR<br><br>**ORDER** |

Pending before the Court is the Defendant Mohave Community College's ("MCC") Motion for Summary Judgment (Doc. 20). The Court now rules on the motion.

**I.    INTRODUCTION**

The Plaintiff in this action, Laurel Myra Penrod, began working for MCC as a part-time grounds and facilities operations assistant on July 11, 2000. The Plaintiff was part of the landscaping and maintenance crew and was under contract to work approximately 29.5 hours a week. Although MCC had several locations that required the services of landscaping and maintenance crews, the Plaintiff worked at the District Campus. From the time Plaintiff started her employment with MCC until about August 8, 2002, the landscaping and maintenance crew was supervised by Russell "Butch" Henson.

On August 8, 2002, former MCC employee, Laurine Hayden, telephone MCC and verbally reported possible inappropriate conduct by Mr. Henson. However, the Plaintiff did not ask Ms. Hayden to make this phone call nor did she know it was being done. After the verbal complaint was received, MCC representatives promptly interviewed the Plaintiff about

1  the actions of Mr. Henson. The Plaintiff stated that during the first week she was employed
2  by MCC in July 2000, Henson made an inappropriate comment to her in front of other co-
3  workers. When the Plaintiff was departing in a van with other co-workers, Henson allegedly
4  commented that she should "put a mattress in the back and make some money during the
5  trip." Despite this comment, Plaintiff continued working for MCC and Mr. Henson for
6  approximately another two years and never reported or complained about the incident.
7  During this two year period, the Plaintiff stated that she was also called derogatory names
8  by Mr. Henson – "lawn princess," "weed witch," "mow-ho," and "blow-ho."[1] The final
9  incident the Plaintiff testified about was that in response to a discussion of a possible
10 hysterectomy she was to undergo Henson said, "Oh, we'll do it here on the welding table."

11 After her initial interview, the Plaintiff was promptly placed on leave from August 8
12 until August 16, 2002. According to MCC, this leave was provided for Plaintiff's protection
13 and in order for MCC to adequately investigate Mr. Henson's alleged misconduct. When
14 Plaintiff returned to work on August 16, 2002, Mr. Henson had already been disciplined and
15 transferred by MCC. Matt Purcell, once MCC's Facilities Operations Manager and Plaintiff's
16 co-worker, replaced Henson after he was removed from his position.[2]

17 After working August 16, 2002 at the District location, MCC informed the Plaintiff
18 that beginning on August 19, 2002, she would work at another MCC location, the Kingman
19 Campus. This transfer was done to address the newly discovered issues and was a temporary
20 move as MCC's work crews were being restructured. Despite the transfer to the Kingman
21 Campus, the Plaintiff would be kept in the same type of position, with the same job
22 description, receive the same pay, and work the same hours as she did at the District location.
23 However, at the Kingman Campus the Plaintiff would have a different supervisor and would
24 be performing some different tasks, including mopping and sweeping.

---

[1] The Plaintiff testified that she was originally called "lawn princess" and "weed witch" by Laurine Hayden, and Mr. Henson then started using those names as well.

[2] The Plaintiff testified that she had difficulty getting along with Mr. Purcell and believed that he had less ability and worked less than she did.

- 2 -

1    The Plaintiff initially agreed to the move and reported to work at the Kingman
2 Campus on August 19, 2002; however, she stated that she did not want to perform the work
3 assigned to her and subsequently testified that she does "not do sweeping and mopping."
4 Furthermore, the Plaintiff maintained that her co-workers at the Kingman Campus would not
5 look at her because they mistakenly believed that she had complained of sexual harassment.
6 In addition, the Plaintiff objected to the condition of the bathroom facilities at the Kingman
7 Campus.

8    Plaintiff requested and was granted an additional seven days of leave after she started
9 work at the Kingman Campus. She agreed to report back to work on August 26, 2002.
10 However, the Plaintiff never reported back to work and did not give MCC an opportunity to
11 address any of her concerns. Although MCC attempted to contact the Plaintiff by phone it
12 was unsuccessful. When the Plaintiff still did not return to work, MCC concluded that she
13 was abandoning her job and did not intend to resume her responsibilities.

14    On January 23, 2004, MCC again offered to reinstate the Plaintiff. The offer of
15 employment was equivalent to the position in the recently realigned MCC Maintenance
16 Department. Therefore, if the offer was accepted, the Plaintiff would have been placed in
17 a position with a similar job description and assigned to a location consistent with her
18 previous assignment. The Plaintiff would have also worked the same 29.5 hours per week.
19 Although the Plaintiff admittedly received MCC's offer, she did not call MCC or go by the
20 MCC office to review the job description.

21    In November of 2004, the Plaintiff filed her Complaint with this Court asserting two
22 causes of action against MCC: (1) Gender Based Discrimination in Violation of Title VII;
23 and (2) Retaliation. The Plaintiff seeks compensatory damages for the effects of the
24 discrimination, reinstatement to her former position in a workplace free of discrimination or
25 retaliation, and the back pay and benefits she would have earned had she never been
26 constructively discharged.

27 **II.    LEGAL STANDARD AND ANALYSIS**

28

- 3 -

1    The standard for summary judgment is set forth in Rule 56(c) of the Federal Rules of
2 Civil Procedure. Under this rule, summary judgment is properly granted when: (1) no
3 genuine issues of material fact remain; and (2) after viewing the evidence in the light most
4 favorable to the non-moving party, the movant is clearly entitled to prevail as a matter of law.
5 Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins.
6 Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).
7    The moving party bears the burden of demonstrating that it is entitled to summary
8 judgment. Mur-ray Mgmt. Corp. v. Founder Title Co., 819 P.2d 1003, 1005 (9th Cir. 1991).
9 If the moving party makes a prima facie case showing that no genuine issue of material fact
10 exists, the burden shifts to the opposing party to produce sufficient competent evidence to
11 show that a triable issue of fact does remain. Ancell v. United Station Assocs., Inc., 803 P.2d
12 450 , 452 (9th Cir. 1990). The Court must regard as true the non-moving party's evidence if
13 it is supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324.
14 However, the non-moving party may not merely rest on its pleadings; it must produce some
15 significant probative evidence tending to contradict the moving party's allegations and
16 thereby creating a material question of fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
17 256-57(1986)(holding that the plaintiff must present affirmative evidence in order to defeat
18 a properly supported motion for summary judgment); First Nat'l Bank v. Cities Serv. Co.,
19 391 U.S. 253, 289(1968).

20    **A.    Gender Based Discrimination**

21    From July 2000 until the time she was forced to take a leave of absence, the Plaintiff
22 maintains that she was subjected to sexual harassment in the workplace by her supervisor,
23 Mr. Henson. This alleged misconduct came in the form of unwelcome sexual comments
24 made to the Plaintiff by her supervisor, the same supervisor calling her sexually derogatory
25 nicknames as well as making inappropriate comments and gestures to other co-workers about
26 the Plaintiff. It is the Plaintiff's position that MCC knowingly allowed a working
27 environment that was hostile to females and failed to appropriately respond to complaints of
28 sexual harassment. The Defendant, however, asserts that summary judgment should be

1  granted in its favor on Plaintiff's claim for gender discrimination because the conduct alleged
2  by Plaintiff, even if it occurred, was not sufficiently severe or pervasive enough to have
3  altered the conditions of her employment.  Furthermore, the Defendant maintains that the
4  Plaintiff cannot show that MCC engaged in a pattern or practice of discriminatory treatment
5  based on gender.

6  Under Title VII, it is unlawful for an employer to "discriminate against any individual
7  with respect to his compensation, terms, conditions or privileges of employment, because of
8  . . . sex."  42 U.S.C. § 2000e-2(a)(1).  Sexual harassment in the form of a hostile work
9  environment constitutes gender discrimination. Meritor Sav. Bank, FSB v. Vinson, 477 U.S.
10 57, 64, (1986).  To prevail on a hostile environment claim, the Plaintiff must establish a
11 "pattern of ongoing and persistent harassment severe enough to alter the conditions of her
12 employment."  Draper v. Coer Rochester, Inc., 147 F.3d 1104, 1108 (9th Cir. 1998).  To
13 satisfy this requirement, the Plaintiff need only show that her workplace was "both
14 objectively and subjectively offensive, one that a reasonable person would find hostile or
15 abusive, and one that [she] did in fact perceive to be so."  Faragher v. City of Boca Raton,
16 524 U.S. 775, 787 (1998).

17 The Ninth Circuit has set forth a three-factor test to determine whether a working
18 environment is hostile within the meaning of Title VII. The Plaintiff must show that: (1) she
19 was subjected to verbal or physical conduct based on her membership in a protected class;
20 (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive
21 enough to alter the conditions of her employment and create an abusive working
22 environment. Meritor Sav. Bank, FSB, 477 U.S. at 67; Jordan v. Clark, 847 F.2d 1368, 1373
23 (9th Cir. 1988). In addition, the Court must look at "all the circumstances," including the
24 frequency of the discriminatory conduct; it's severity; whether it is physically threatening or
25 humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an
26 employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).  The
27 required level of severity or seriousness of the harassing conduct varies inversely with the
28

1 pervasiveness or the frequency of the conduct. Ellison v. Brady, 924 F.2d 872, 878 (9th Cir.
2 1991).

3 For the reasons set forth below, the Court finds that the facts alleged by the Plaintiff
4 and the supporting evidence is insufficient to create a genuine issue of material fact regarding
5 whether the Plaintiff was subjected to a hostile work environment in the form of gender
6 discrimination in violation of Title VII.[3]

7 The Plaintiff testified that she was subjected to three incidents or comments she
8 maintains constitutes sexual harassment. First, the Plaintiff stated that during the first week
9 she was employed by MCC, in July of 2000, Mr. Henson made an inappropriate comment
10 to her and in front of co-workers. Allegedly, while she was departing in a van with co-
11 workers, Mr. Henson commented that she should "put a mattress in the back and make some
12 money during the trip." This comment was met with laughter from those present. However,
13 the Plaintiff did not complain about the comment, and in fact testified that she re-told the
14 events of that day to others as laughable.

15 Second, the Plaintiff complains that during her two plus years of employment with
16 MCC, she was called several derogatory names by Mr. Henson: "lawn princess," "weed
17 witch," "mow-ho" and "blow-ho." The Plaintiff provided no specific evidence as to the dates
18 she was called these names. Furthermore, the Plaintiff's testimony revealed that she
19 understood these names to be in jest and never complained about being called these names
20 to anyone at MCC.

21 The third incident of which the Plaintiff complains occurred in response to a
22 conversation the Plaintiff was having regarding a possible hysterectomy. Mr. Henson said,
23 "Oh, we'll do it here on the welding table." The Plaintiff provided no specific evidence as

---

[3]In fact, the Plaintiff only submitted three statements of fact with its response in opposition to the Defendant's Motion for Summary Judgment. In addition, only the Plaintiff's third statement of fact contends that it is controverting any of the Defendant's statement of facts. The Plaintiff asserts that only Defendant's statement of facts numbers three and twelve are controverted; therefore, the remaining statement of facts submitted by Defendant MCC will be considered undisputed pursuant to Rule 56 of the Federal Rules of Civil Procedure.

to the date and time this incident occurred. However, the Plaintiff did testify that she understood Mr. Henson was joking and did not take his comment seriously.

The Court concludes that the incidents alleged by the Plaintiff, even if taken as true, are insufficient to establish a hostile environment claim based on sexual harassment. Mr. Henson's conduct in this case is comparable to conduct that the Ninth Circuit has found not to be severe or pervasive enough to actually alter the conditions of employment. For example, in Kortan v. California Youth Authority, 217 F.3d 1104 (9th Cir. 2000), the Court concluded that a plaintiff failed to sustain a hostile work environment claim based on: (1) a supervisor calling female employees "castrating bitches," "Madonnas," or "Reginas" on multiple occasions in the plaintiff's presence; (2) the plaintiff's supervisor calling the plaintiff "Medea;" and (3) sending her postcards at home. See, e.g., Vasquez v. County of Los Angeles, 349 F.3d 634 (9th Cir. 2003)(the Court found no racially hostile work environment claim where the supervisor made only two derogatory comments about the plaintiff in a six-month period). Furthermore, the Plaintiff herself admits that Mr. Henson's conduct did not rise to the level that she felt she needed to complain. However inappropriate and offensive Mr. Henson's comments were, none of the alleged misconduct was physically threatening nor did it unreasonably interfere with the Plaintiff's ability to due her job. This is confirmed by the Plaintiff's own testimony. As such, the Court concludes that no triable issue of fact exists about whether Mr. Henson's conduct was frequent, severe or abusive enough to interfere unreasonably with the Plaintiff's employment. Summary judgment is granted in Defendant's favor on Plaintiff's gender based discrimination claim.

**B.    Retaliation**

Plaintiff's second cause of action is for retaliation. The Plaintiff maintains that her co-workers and supervisors retaliated against her for opposing sexual harassment at MCC. According to the Plaintiff, such retaliation included the following: (1) shunning her in the workplace; (2) prejudicial treatment of the Plaintiff by her new supervisor; and (3) transferring the Plaintiff to a full-time position but retaining her part-time status and salary at a different location while retaining a male worker's full-time status and salary in her former

1  part-time position shortly after her complaints of sexual harassment. The Plaintiff contends
2  that such retaliation resulted in her constructive discharge from employment.

3  The Defendant has also moved for summary judgment on the Plaintiff's claim of
4  retaliation. It is the Defendant's position that the Plaintiff was never subjected to an adverse
5  employment action, and even if the change in Plaintiff's work area was an adverse
6  employment action it was not a result of her participation in the sexual harassment
7  investigation.[4]

8  In order to establish a prima facie case of retaliation under Title VII, the Plaintiff must
9  show that: (1) she engaged in protected activity; (2) she suffered an adverse employment
10 decision; and (3) there was a causal link between the protected activity and the adverse
11 employment action. Ray v. Henderson, 217 F.3d 1234, 1245 (9th Cir. 2000). If the Plaintiff
12 asserts a prima facie retaliation claim, the burden then shifts to the Defendant to articulate
13 a legitimate non-discriminatory reason for its decision. Id. If the Defendant sufficiently
14 articulates such a non-discriminatory reason, the Plaintiff then bears the ultimate burden of
15 demonstrating that the reason was merely a pretext for a discriminatory motive. Id.

16 Apparently, the Plaintiff claims that MCC retaliated against her for participating in
17 the investigation into Mr. Henson's alleged misconduct. It is undisputed that Plaintiff's
18 participation in MCC's investigation was a statutorily protected activity; however, whether
19 the Plaintiff suffered an adverse employment action is at issue. The United States Supreme
20 Court has held that an alleged adverse employment action must rise to a tangible employment
21 action to trigger the protections afforded by Title VII. Burlington Indus., Inc. v. Ellerth, 524
22 U.S. 742, 761 (1998). A tangible employment action is a "significant change in employment
23 status, such as hiring, firing, failing to promote, reassignment with significantly different
24 responsibilities, or a decision causing a significant change in benefits." Id.

---

[4] The Court need not address whether MCC is liable for Mr. Henson's alleged misconduct under either a vicarious liability or negligence theory. In order for such analysis to be a necessary, a hostile work environment claim must first be established. The Court concluded that the Plaintiff's hostile work environment claim based on gender discrimination fails as a matter of law.

- 8 -

In this case, the Plaintiff admits that her pay was not reduced, her job description did not change, and her hours remained the same. The fact that the Plaintiff was moved to a different site to perform the same or similar responsibilities does not amount to an adverse employment action. See, e.g., Nidds v. Schindler Elev. Corp., 113 F.3d 912, 919 (9th Cir. 1996), cert. denied, 522 U.S. 950 (1997) (transfer to different department without loss of salary or benefits insufficient to constitute adverse employment action). Although the Plaintiff asserts that she was given less desirable janitorial duties that did not continue her professional development, she testified that building maintenance was always a part of her job and she performed building maintenance throughout her employment with MCC.

The Plaintiff also argues that her reassignment was an act of retaliation because her former position at the District Campus was filled by a male.[5] She maintains that as a female she was paid for 29.5 hours to complete the same tasks a male had been paid 40 hours to complete. However, other than her own speculation, the Plaintiff has not submitted any evidence to support this allegation. The record does not contain any evidence regarding the jobs performed by the other male employee, the hours he worked, the terms of his contract, or the amount he was paid. As such, this claim remains unsubstantiated and will not create a triable issue of fact regarding the Plaintiff's retaliation claim.

The Plaintiff also asserts that she suffered retaliation by being ostracized by her co-workers after the report of harassment was made. However, the Ninth Circuit has determined that such conduct is not actionable under Title VII. See, e.g., Ray, 217 F.3d at 1241 ("mere ostracism by co-workers does not constitute an adverse employment action"); Manatt, 339 F.3d at 803 ("Mere ostracism in the workplace is not grounds for a retaliation claim"); Strother v. Southern California Permanente Medical Group, 79 F.3d 859, 869 (9th Cir. 1996)

---

[5]Even if the Court deemed Plaintiff's transfer to the Kingman Campus an adverse employment action, the Defendant has presented a legitimate non-discriminatory reason for the move. MCC maintains that one reason it transferred the Plaintiff was because she had difficulty working with the individual who was to assume Mr. Henson's position, Matt Purcell. Plaintiff's own deposition confirms this fact. The Plaintiff failed to demonstrate to the Court that this reason was merely a pretext for a discriminatory motive.

1  ("For example, mere ostracism in the workplace is not enough to show an adverse
2  employment decision."). Indeed, the Ninth Circuit has stated that "holding an employer
3  liable because its employees refuse to associate with each other might well be
4  unconstitutional." Brooks v. City of San Mateo, 229 F.3d 917, 929 (9th Cir. 2000).

5  Based on the foregoing, the Court concludes that Plaintiff's retaliation claim must fail
6  as well because there is no genuine issue of material fact as to whether she actually suffered
7  any adverse employment action.

## B. Constructive Discharge

9  The Plaintiff also claims that she was constructively discharged from employment by
10 MCC. A constructive discharge occurs when working conditions become so intolerable that
11 a reasonable person in the employee's position would have felt compelled to resign.
12 Pennsylvania State Police v. Suders, 524 U.S. 129, 131 (2004). Constructive discharge thus
13 requires something even more than a hostile environment claim. Id. Moreover, the
14 intolerable conditions must exist at the time of the employee's resignation. Steiner v.
15 Showboat Operating Co., 25 F.3d 1459, 1466 (9th Cir. 1994) (upholding summary judgment
16 in defendant's favor on constructive discharge claim where the harasser was fired two and
17 one-half months prior to the victim's resignation). The Ninth Circuit has observed that "Title
18 VII policies are best served when the parties, if possible, attack discrimination within the
19 context of their existing employment relationship." Watson v. Nationwide Ins. Co., 823 F.2d
20 1428, 1434 (9th Cir. 1987)(citations omitted).

21 In this situation, the reasons the Plaintiff gives for abandoning her job do not rise the
22 level required for a constructive discharge. The Plaintiff reported for work at the Kingman
23 Campus on August 19, 2002; however, she only performed her duties for one day. The
24 Plaintiff testified that her co-workers would not look at her because they mistakenly believed
25 she had complained of sexual harassment; she found the condition of the restroom facilities
26 objectionable; and she was assigned janitorial duties, such as sweeping and mopping, that
27 she did not want to perform. However, even if these allegations were sufficient for the Court
28 to find intolerable conditions, the Plaintiff did not give MCC an opportunity to address her

concerns or remedy any perceived problems. In fact, it is undisputed that MCC encouraged the Plaintiff to return to work and even made her a formal offer of employment where she would be placed in a position with a similar job description and assigned to a location consistent with her previous assignment. The Plaintiff refused to accept the offer because it was the same 29.5 hours she had previously worked and not the 40 hours she wanted.

IT IS ORDERED that the Defendant's Motion for Summary Judgment (Doc. 20) is GRANTED. The Clerk is directed to enter judgment accordingly.

IT IS FURTHER ORDERED that the Defendant's Motion to Strike Plaintiff's Statement of Facts (Doc. 28) is DENIED as moot.

DATED this 21st day of June, 2006.

*[signature]*

Paul G. Rosenblatt
United States District Judge